# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

_____

PETROLEUM & FRANCHISE FUNDING, LLC,

          Plaintiff,

v.                                                   Case No. 09-CV-353

DARSHAN S. DHALIWAL and
DEBRA A. DHALIWAL,

          Defendants.

_____

## ORDER

On April 4, 2009, plaintiff, Petroleum & Franchise Funding, LLC ("PFF"), filed suit against defendants alleging that, pursuant to several personal guarantees signed by defendants, defendants are liable for the unpaid principal, fees, and interest owed to PFF on several notes secured by those guarantees. On July 30, 2009, PFF moved for summary judgment on all counts. The issue being fully briefed and ripe for decision, this court, for the reasons stated herein, finds that PFF is entitled to summary judgment.

## BACKGROUND

On March 15, 2000, Bulk Petroleum Corporation ("BPC"), Rakhra Michigan E-Z-Go Stations Three, Inc. ("RMEST"), Dhaliwal's Michigan Bulk Stations Two, Inc. ("DMBST"), Dhaliwal's Indiana Bulk Stations Two, Inc. ("DIBST"), and Darshan's Indiana Stations One, Inc. ("DISO") entered into six Note and Security Agreements (Notes 1-6) with PFF's predecessor-in-interest, QuesTech Financial, LLC

("QuesTech"). (Mot. S.J., Attach. #4, Stip. Facts ¶¶ 1, 4, 7, 10, 13, 16). On the same date, to induce QuesTech to enter those notes, defendants each, individually, executed and delivered to QuesTech six personal guarantees in which each defendant unconditionally and absolutely guaranteed to QuesTech (and its successors and assigns) all payment and performance obligations of the six notes. (Id. ¶¶ 2, 3, 5, 6, 8, 9, 11, 12, 14, 15, 17, 18). On October 6, 2000, BPC, RMEST, Darshan's Michigan Stations One, Inc. ("DMSO"), Darshan's Michigan Bulk Stations Two, Inc. ("DAMBST"), and DHMBST entered into five Note and Security Agreements (Notes 7-11) with PFF's predecessor-in-interest, QuesTech. (Id. ¶¶ 19, 22, 25, 28, 31). On the same date, to induce QuesTech to enter those notes, defendants each, individually, executed and delivered to QuesTech, five personal guarantees, in which each defendant unconditionally and absolutely guaranteed to QuesTech (and its successors and assigns) all payment and performance obligations of the five notes. (Id. ¶¶ 20, 21, 23, 24, 26, 27, 29, 30, 32, 33).

Pursuant to the terms of each of the notes, QuesTech lent money to the borrowers, and each of the borrowers agreed to repay the loans by making specified monthly payments of principal and interest to QuesTech (or its successors or assigns) over a fifteen-year period pursuant to the terms of the notes. (Id. ¶ 34). Section 1(e) of each of the notes provides the following in regards to "default interest":

> [W]ith respect to installment payments overdue for more than thirty (30) days, and all other amounts payable to [QuesTech] by the [Borrowers], a late charge calculated at the rate of 18% per annum on such overdue amount . . . from the date such payment is due (or demanded, as the case may be) until the date such payment is made in full to [QuesTech].

(Id. ¶ 35). Section 1(e) of each of the notes provides the following in regards to "late fees":

> Whenever any installment or other amount payable to [QuesTech] by the [Borrowers] is not made when due, the [Borrowers] agree[] to pay to [QuesTech], on demand, as liquidated damages and not as a penalty: (a) with respect to installment payments, an administrative fee equal to five cents ($.05) for each one dollar ($1.00) of such delayed installment payment overdue for more than five (5) days.

(Id. ¶ 36).

Section 17(a) of each of the notes sets out the various occurrences which constitute an "event of default." (Compl. Ex. # 1, at 4). According to Section 17(a), two of the many occurrences that constitute an event of default are: "the Borrower fails to make any payment when due hereunder," (Section 17(a)(I)) and "the filing of a petition in bankruptcy by . . . an Obligor," (Section 17(a)(xi)). (Compl. Ex. #1 at 4). Section 17(a) specifies that if an event of default occurs, "then to the extent permitted by applicable law, the Lender shall have the right to exercise any one or more of the remedies set forth in Section 17(b) . . . following ten (10) days written notice to Borrower by Lender." (Id.). The only remedy set out in Section 17(b) is that "[u]pon the occurrence of an Event of Default, at the Lender's sole option the

3

entire unpaid total amount of the Obligations for the balance of the term hereof shall be at once due and payable." (Id.).

Additionally, each note contains an Addendum No. 2, which addresses the issue of prepayment of the notes. (Compl. Ex. #1 at 9). According to Addendum No. 2, "if the Principal amount is prepaid for any reason, Borrower shall pay to Lender simultaneously with such prepayment (including any accrued interest) as a prepayment fee, an amount determined in accordance with" the formula set out in Addendum No. 2. (Id.). According to the given formula, a note prepaid in the ninth year of the loan is subject to a prepayment fee equal to 7% of the original principal balance. (Id.).

On January 1, 2009, the borrowers defaulted on Notes 1, 2, 5, 6, 8, and 9 when they failed to make the required monthly payments due thereunder to PFF. (Mot. S.J. Attach. #5, Decl. Siranko, ¶¶ 44, 46, 49, 50, 52, 53). On February 1, 2009, borrowers defaulted on Notes 3, 4, 7, 10 and 11 when they failed to make the required monthly payments due thereunder to PFF. (Id. ¶¶ 47, 48, 51, 54, 55). On February 19, 2009, each of the borrowers filed bankruptcy petitions. (Id. ¶ 57). Despite demand, neither of the defendants has paid any amount to PFF pursuant to the terms of any of the Guarantees. (Mot. S.J., Attach. #4, Stip. Facts ¶ 38).

## ANALYSIS

In response to PFF's motion for summary judgment, defendants filed an opposition brief only challenging the issue of the amount that defendants owe.

4

Defendants did not oppose liability in general. Indeed, the stipulated facts demonstrate that PFF is entitled to summary judgment as to the issue of liability. Thus, the only remaining issue is the amount to which PFF is entitled. In its motion, PFF argues that it is entitled to $5,707,259.10.[1] Defendants oppose this amount on two grounds. Defendants argue that PFF never accelerated the debt (thus making the entire amount due and payable) pursuant to 17(b), and defendants argue that the sum put forth includes prepayment fees (as well as interest on those fees) and that this is improper since defendants have not prepaid the debt.

I.     **Summary Judgment Standard**

Summary judgment is appropriate where the movant establishes that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Material facts" are those facts which "might affect the outcome of the suit," and a material fact is "genuine" if a reasonable finder of fact could find in favor of the nonmoving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is appropriate where a party has failed to make "a showing sufficient to establish the existence of an element essential to that party's case and on which the party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 317. A party opposing

---

[1] PFF presented the court with two other alternate amounts as well. Which of these three amounts is the correct amount depends on the date the court deems to be the date that the entirety of the debts were accelerated pursuant to Section 17(b). Because the court deems February 19, 2009. as the date on which such acceleration occurred, the proper calculation for the amount owed can be found at Decl. Siranko [Docket # 20], Ex. 2, wherein the total amount owed is shown to be $5,707,259.10.

5

summary judgment may not rest upon the mere allegations or denials of the adverse party's pleading, but must set forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). Any doubt as to the existence of a material fact is to be resolved against the moving party. *Anderson*, 477 U.S. at 255.

## II.     Acceleration of the Debt

It is undisputed that under Section 17(b) of each of the notes, PFF had the right to accelerate the debt, thus making the entire unpaid portion due and payable upon an event of default. It is also undisputed that for Notes 1, 2, 5, 6, 8, and 9, an event of default occurred on January 1, 2009, when the borrowers failed to timely make the required payment. Likewise, it is undisputed that for Notes 3, 4, 7, 10 and 11, an event of default occurred on February 1, 2009, when the borrowers failed to timely make the required payment. It is also undisputed that for all of the notes an event of default occurred on February 19, 2009, when the borrowers filed for bankruptcy.

Thus, it is undisputed that PFF had the right to accelerate the debt for six of the notes as of January 1, 2009, and for the remainder as of February 1, 2009. What is disputed is whether PFF did in fact accelerate the debt. According to defendants, PFF never gave defendants the requisite ten-days written notice – as required by Section 17(a) – in order to actually accelerate the debt. (Gerth Aff. ¶ 6). PFF, in its reply brief, does not contest defendants' assertion that it never provided ten-days written notice of its intent to accelerate the debt after default occurred.

6

Rather, PFF asserts that either: 1) it was excused from providing such notice because it was prohibited from doing so by the Bankruptcy Code; or 2) regardless of the lack of notice, the debt was automatically accelerated by operation of law on the date that the borrowers filed for bankruptcy.

PFF argues that 11 U.S.C. 362(a) of the Bankruptcy Code provides for an automatic stay of all clams against a bankrupt party, and that any action taken in violation of the stay is void. (PFF Reply Br. Supp. Mot. S.J. at 3-4). Thus, PFF argues, it was precluded by the stay from sending the requisite ten-day written pre-acceleration notice to the borrowers. (Id. at 4). This argument makes no sense.[2] The automatic stay takes effect upon the filing of the bankruptcy petition. *See In re Optel, Inc.*, 60 Fed. Appx. 390, 392 (3rd Cir. 2003). The borrowers missed their scheduled payments on January 1, 2009, and February 1, 2009. They did not file bankruptcy, thus there was no automatic stay in place, until February 19, 2009. PFF had ample time to send the requisite 10-day written pre-acceleration notice regarding all of the notes before the automatic stay was instituted on February 19, 2009. As Section 17(b) of the notes does not automatically accelerate the debt upon an event of default, but merely provided PFF the option to do so, and since PFF did not exercise that option pursuant to the required mechanisms as set forth in Section

---

[2] Indeed, PFF's argument is so nonsensical as to make the court wonder if it is not perhaps missing something. However, if the court is missing some fact or law that would lead to a different outcome, such mistake can be laid squarely at the feet of PFF for having filed such bare-bone and conclusory briefs.

7

17(a), the court holds that PFF did not accelerate the debt prior to the borrowers' filing for bankruptcy.

PFF argues in the alternative that the unpaid balance of each of the notes was automatically accelerated, as an operation of law, upon the borrowers' filing for bankruptcy. (PFF Reply Br. Supp. Mot. S.J. at 5). "The automatic acceleration of a debt upon the filing of a bankruptcy is well established." *In re Skyler Ridge*, 80 B.R. 500, 507 (C.D. Cal. 1987); *see also In re Princess Baking Corp.*, 5 B.R. 587, 590-91 (Bankr. S.D. Cal. 1980) ("[B]ankruptcy proceedings operate to accelerate the principal amounts of all claims against the debtor[.]"). Pursuant to 11 U.S.C. § 502,[3] this acceleration occurs "irrespective of any contractual clause requiring notice" of acceleration. *In re Manville Forest Products Corp.*, 43 B.R. 293, 297 (Bankr. S.D.N.Y. 1984) (rev'd in part on other grounds). Because the debt was accelerated, and thus became due and payable in full, on February 19, 2009 – the date on which the borrowers filed petitions for bankruptcy – defendants are liable for the full amount

---

[3] Section 502 provides in pertinent part:

(a) A claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest ... objects.
(b) [I]f such objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that-
(1) such claim is unenforceable against the debtor, and unenforceable against property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured ;
(2) such claim is for unmatured interest....

11 U.S.C. § 502.

of the unpaid principle on the notes. Additionally, February 19, 2009, is the date on which the default interest[4] began to accrue on the notes' unpaid principal.

## III.   Prepayment Fees

As earlier noted, PFF asks the court to award it a judgment in the amount of $5,707,259.10, plus the interest that continues to accrue, as well as attorneys fees and costs (per Section 1(e) of the notes). Defendants protest that that sum contains the 7% prepayment fee (as well as default interest on that fee) applicable, according to Addendum No. 2, if the debt is prepaid in the ninth year of the loan. Defendants assert that because they have not prepaid the loan the prepayment fee does not apply. PFF maintains that since the debt became due and payable on February 19, 2009 (in the ninth year of the loan), then the 7% prepayment fee does apply.

Section 27 of the notes specifies that the notes "shall be construed under the laws of the state of Connecticut, without regard to the principles of conflicts of law or choice of law."[5] (Compl. Ex. 1, at 6). In federal court, the choice of law is determined by the choice of law rules of the forum state. *See Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496-97 (1941). In Wisconsin, "parties to a contract may expressly agree that the law of a particular jurisdiction shall control their

---

[4] The court notes that defendants did not challenge the 18% default interest as unconscionable. Since defendants would have born the burden of proof regarding unconscionability (had they asserted such), *Emigrant Mortgage Corporation v. D'Agostino*, 896 A.2d 814, 823 (Conn. App. 2006), the court finds that there is no reason to deny PFF the 18% default interest.

[5] The court made no reference to Connecticut law in its analysis of the acceleration issue because the acceleration occurred as a result of federal bankruptcy law.

9

contractual relations" as long as the parties' choice of law does not violate "important public policies of a state whose law would be applicable if the parties choice of law provision were disregarded." *Bush v. National Sch. Studios, Inc.*, 139 Wis. 2d 635, 642, 407 N.W.2d 883, 886 (1987). With no reason to conclude otherwise, the court will apply the law specified in the parties' contractual arrangements, Connecticut law.

Typically, litigants challenging the imposition of prepayment fees challenge the fees as either unenforceable or invalid. Enforceability is typically challenged in a case, such as here, where the debt has been accelerated. Validity is typically challenged when a party believes that the amount charged for the fee is too high. Defendants, however, have not challenged the prepayment fee on either ground, thus any argument they may have had regarding such is waived. *See Laborers Int'l Union of N. Am. V. Caruso*, 197 F.3d 1195, 1197 (7th Cir. 1999) (stating that arguments not presented to the district court in response to summary judgment motions are waived). However, for the sake of thoroughness, the court notes that under Connecticut law the prepayment fee is both enforceable and valid.

In determining the enforceability of a prepayment fee, Connecticut courts often look to the voluntariness of the prepayment. *See Ridgefield Surgical Center v. People's United Bank*, 2008 WL 4307490, 2 n.2 (Conn. Super. 2008) (citing and discussing authorities therein). Thus, often, if a lender chooses to accelerate a debt, the lender is not entitled to the prepayment fee. *Id.* However, in the instant case, PFF did not choose to accelerate the debt, it occurred automatically when the

10

borrowers filed for bankruptcy. *See generally In re Skyler Ridge*, 80 B.R. 500, 507 (Bankr. C.D. Cal. 1987) ("The automatic acceleration of a debt upon the filing of a bankruptcy case is not the kind of acceleration that eliminates the right to a prepayment premium."). Additionally, courts typically enforce prepayment fees regardless of acceleration, when the prepayment provision anticipates that such fee will be paid whether as a result of election or acceleration. *Ridgefield Surgical Center,* 2008 WL 4307490 at 2 n.2; *see also In re AE Hotel Venture*, 321 B.R. 209, 219 (Bankr. N.D. Ill. 2005) (allowing prepayment fee, despite fact debt was accelerated, because loan document provided for such). Addendum No. 2 to each of the notes in the instant case states that the prepayment fee shall be assessed "if the Principal amount is prepaid for *any* reason[.]" (Compl. Ex. 1 at 9)(emphasis added). Accordingly, the notes in the instant case provide for imposition of the prepayment fee regardless of whether such prepayment results from election or acceleration. The fee is thus enforceable.

Regarding the validity of prepayment fees, Connecticut law holds that such fees are "recognized to serve an important commercial purpose." *Eastern Savings Bank, FSB v. Munson*, 932 A.2d 1079, 1081 (Conn. Super. 2007). "A number of cases confirm the justification of prepayment [fees] to compensate lenders for the loss of the bargain if the loan is paid before a specified period of time." *Id.* Prepayment fees are valid so long as they constitute liquidated damages, and are not a penalty for breaching the contract. *Ridgefield Surgical Center*, 2008 WL

11

4307490 at 3. The party asserting invalidity has the burden to show that the fee amount "so far exceeds any actual damages as to be in the nature of a penalty." *American Car Rental, Inc. v. Commissioner of Consumer Protection*, 869 A.2d 1198, 1210 (Conn. 2005). Defendants have neither alleged nor submitted any evidence indicating that there is any reason to construe the agreed upon prepayment fee as an invalid penalty.

The foregoing analysis of the enforceability and validity of the prepayment fee, while hopefully informative, is in fact irrelevant, as defendants have not challenged the fee on either of these grounds. They only argue that the fee has not been triggered because the debt has not actually been paid yet, thus it has not been prepaid. This argument fails. The 7% prepayment fee was triggered when the debt became due and payable in the ninth year, prior to the natural maturation, of the loan. *See Eastern Savings Bank, FSB v. Munson*, 932 A.2d 1079, 1084 (Conn. Super. 2007) (the prepayment "premium is required to be included in the final foreclosure judgment."); *see also SO/Bluestar, LLC v. Canarsie Hotel Corp.*, 825 N.Y.S.2d 80, 81 (N.Y. App. 2006) (prepayment amount calculated as of "the date on which the debt was accelerated and all sums became due and payable.").

Defendants also challenge the notion that PFF is entitled to 18% default interest on the 7% prepayment fee. However, defendants do not challenge this on any basis other than that PFF is not entitled to the 7% prepayment fee. Nowhere do defendants argue that even if PFF is entitled to the 7% prepayment fee, that it is

12

nonetheless not entitled to 18% default interest on that fee. However, even if such an argument were made, it would clearly fail, as Section 1(e) states that the 18% default interest applies to "installment payments overdue for more than thirty (30) days, and *all other amounts* payable to the Lender by the Borrower hereunder[.]" (Compl. Ex. 1 at 1)(emphasis added). Thus, it is clear that if PFF is entitled to the prepayment fee, which it is, then it is also entitled to default interest on the prepayment fee.

## CONCLUSION

The unpaid portions of each of the notes was automatically accelerated, thus became due and payable, upon the borrowers' filing for bankruptcy on February 19, 2009. Therefore, defendants are liable not just for the missed installment payments, but also for the unpaid principal and all applicable late charges and default interest. Additionally, the 7% prepayment fee is valid and enforceable, and was triggered on February 19, 2009, when the debt become due and payable prior to its natural maturation date. Per Section 1(e) of the notes, PFF is entitled to default interest on the unpaid prepayment fees. For these reasons, PFF is entitled to summary judgment, and is awarded judgment in the amount of $5,707,529.10 (as calculated in Decl. Siranko [Docket # 20], Ex. 2), plus interest, attorneys fees, and costs .

Accordingly,

13

**IT IS ORDERED** that plaintiff's Motion for Summary Judgment (Docket #13) be and the same is hereby **GRANTED**; and that plaintiff, Petroleum & Franchise Funding LLC, have and recover from the defendants, Durham S. Dhaliwal and Debra A. Dhaliwal, jointly and severally, the sum of $5,707,529.10, together with interest, attorneys fees, and costs as taxed.

The clerks office is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 25th day of January, 2010.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge